**STATES EXPLORATION COMPANY, a Foreign Corporation, Plaintiff in Error,**

v.

**Fred REYNOLDS, Defendant in Error.**

**Nos. 38095, 38372.**

Supreme Court of Oklahoma.

Sept. 15, 1959.

T. R. Benedum, Norman, for States Exploration Company, a foreign corporation.

Bailey & Whitlock, Norman, for Fred Reynolds.

WELCH, Justice.

The reason for the two appeals arises out of the following situation: The cause was tried in May of 1957. A motion for new trial was filed and overruled during the same term. An appeal was filed with this court in December, 1957, by the defendant from the judgment rendered in favor of the plaintiff, being in Case No. 38,-095. The defendant filed its brief in January, 1958, and plaintiff filed his briefs in February, 1958. Thereafter, on February 20, 1958, a petition for a new trial on the grounds of alleged newly discovered evidence was filed in the district court by the defendant. A hearing was had on said petition and the court granted the motion for new trial. The appeal by plaintiff in No. 38,372 is from the judgment and order granting this new trial.

This action was commenced October 10, 1956, in the trial court by the plaintiff, Fred Reynolds, against the defendant States Exploration Company. The parties will hereafter be referred to as they appeared in the trial court.

The record reveals that the plaintiff in 1949 constructed an earthen dam upon a tract of land owned by him, which impounded water over approximately sixty-five acres of surface. On May 7, 1956, defendant, in conducting seismic operations, detonated two charges of dynamite in a drilled hole immediately south of the earthen dam, approximately one-hundred and fifty feet from one end of the dam, and three hundred feet from the other end.

The evidence concerning the effect of this activity by the defendant is conflicting. Plaintiff produced evidence to prove that the dam had held water for seven years except for a small amount of seepage common to all earthen dams; that subsequent to the explosions water of the same color and chloride content as that of the lake arose from the shot hole much in the manner of water from an artesian well; that the level of the lake began to drop at the rate of six to eight inches per day; that water continued to flow from the shot hole for two or three weeks; that a pond of water formed below the dam which was considerably larger than that formed from natural seepage during prior years; that the water level of the said lake decreased within thirty days to less than ten surface acres of water, and the water receded from the dam a distance of approximately one hundred feet; that subsequent rains on the watershed have periodically refilled the lake, but that it immediately recedes when the runoff ceases; that there are no natural artesian wells in the area; that underground water has a different chloride content to that of surface water. An expert witness for plaintiff testified that since no water appeared in two other shot holes a distance of only fifteen to twenty feet from

the one producing water, it was his opinion that the water coming from the hole was from the lake by way of a fissure directly connecting that hole with the lake. Another expert witness testified it was not safe to explode this quantity of dynamite at such distance from the dam. Two expert witnesses testified that the damage would probably cause the dam to slide or wash out in the future. Plaintiff's testimony also established that the dam was leaking badly for a distance of two hundred feet across its base; that the base soil was saturated; that the dam could not be repaired in sections, but the entire structure would have to be removed and replaced.

The defendant offered evidence to show that plaintiff's dam had not been efficiently and adequately constructed; that the dynamite explosions had not damaged plaintiff's dam or lake; that any lowering of the lake water level in 1956 was due to decreased rainfall and to natural evaporation and seepage, and not to the dynamite explosions; that the lake was full at the time of trial in May, 1957.

The plaintiff contended that, while the lake was full at time of the trial, the water level had intermittently risen because of rains and fallen because of damage by the dynamite explosions during the year that elapsed between the date of the explosions and the trial date, and there was some evidence to that effect.

The testimony of various witnesses estimated the damages to plaintiff's dam and lake at from $12,000 to $30,000. The jury found the facts for plaintiff, and awarded damages of $9,000.

In its first proposition defendant contends that the trial court erred in overruling its demurrer to the evidence.

In the case of Elk City v. Rice, Okl., 286 P.2d 275, 276, we held:

"In passing upon alleged error in overruling defendant's demurrer to plaintiff's evidence and request for directed verdict, the evidence will be construed in the light most favorable to plaintiff and where there is any evidence or reasonable inferences from the circumstances reasonably tending to establish a cause of action or to sustain a jury's verdict and judgment based thereon, such judgment will be sustained on appeal unless shown to be contrary to law."

Also see Carter Oil Co. v. Johnston, 208 Okl. 564, 257 P.2d 817, and Grand Distributing Co. v. Adams, 206 Okl. 451, 244 P.2d 571.

We are of the opinion that the evidence in this case is sufficient to sustain the verdict, and the trial court did not commit error in overruling the demurrer of defendant.

The defendant also contends that the court erred in giving instructions Nos. 3, 5 and 6.

Instruction No. 3 was to the effect that defendant was liable for all damages to plaintiff's property resulting directly and proximately from explosion, and that this was true notwithstanding the exercise of due care by defendant. This instruction was substantially a correct statement of the law as to defendant's liability. Seismograph Service Corp. v. Buchanan, Okl., 316 P.2d 185; Smith v. Yoho, Okl., 324 P.2d 531, and Superior Oil Co. v. King, Okl., 324 P.2d 847.

Instruction No. 5 instructed the jury that if it found by a preponderance of the evidence that as a direct and proximate result of setting off the blast that the dam was cracked, resulting in the loss of twenty-five acres of water, materially damaging said lake, and that loss of water was not caused by extended dry period, that in that event its verdict must be for plaintiff, but if it did not find such, its verdict must be for the defendant. Defendant contends the court erred in failing to instruct the jury as to other theories, i. e., that the loss of water was by seepage due to faulty construction, and that explosion did not weaken the dam. These theories are merely evidentiary questions which tend to negate the positive conclusion required of the jury to establish liability.

Defendant also asserts that the court erred in giving instruction No. 6, which is as to the measure of damages. Although defendant objected to this instruction and saved its exceptions, it offered no substitute for the instruction given by the court. The main objection is that this instruction covered issues not raised by the pleadings. However, we are of the opinion that the instruction was within the scope of the issues as shown by the evidence presented at trial without objection.

In the case of Coats v. Duncan, 202 Okl. 188, 211 P.2d 269, 270, we held:

"The trial court commits no error in giving an instruction within the issues raised by the evidence in the case admitted without objection, although not within the issues raised by the original pleadings in the case, where the pleadings might have properly been amended at the trial to conform to the proof."

This instruction in our opinion substantially covered the issues as shown by the evidence, and the trial court did not commit error in giving it.

It is next contended by defendant that the court erred in failing to instruct the jury upon the issues based upon the pleadings and the evidence.

In the case of Mohawk Drilling Co. v. Biffle, Okl., 271 P.2d 381, 382, we held:

"Where the instructions of the Court do not cover special theories or defenses relied upon the complaining party is bound to call the Court's attention to the omission by an appropriate request for additional instructions, or he will be precluded from making such failure available as reversible error."

We find that the instructions as a whole fairly submitted the cause to the jury on the issues of fact presented, and therefore we are of the opinion that this contention is without merit.

It is next argued by defendant that the verdict is excessive and against the clear weight of the evidence.

The evidence, admitted without objection by defendant, amply sustains the allegation of damage to this structure on the property. It is true the plaintiff did not establish by his evidence the details of the pecuniary loss suffered by reason of the special damages alleged to be connected with the gravamen of the action, however, this circumstance cannot aid defendant in establishing the correct measure of damage. The basic damages upon which recovery was predicated were established by the evidence. Viewed thusly, the proper measure of damages in this action was the cost of repair of the dam. This was not a permanent damage to the real estate as such; instead, this was damage to a structure located upon the real estate. Damage to a dam may be considered as somewhat the same as damage to a house, fence, or any other structure on real property. It can be restored.

The verdict of the jury was substantially less than the lowest amount shown by the evidence as to the cost of repair. In Ellison v. Walker, Okl., 281 P.2d 931, 932, 933, we stated:

"* * * in this jurisdiction the measure of damages to real property which are of a temporary character is the reasonable cost of repairing the damage or restoring the property to its former condition, where, as herein, the cost of restoration is less than the fair value of the property before and after the injury and the building can be restored to substantially the condition it was prior to the injury."

To the same effect see Oden v. Russell, 207 Okl. 570, 251 P.2d 184.

The conclusion of the jury on the amount of damages is well within the amount sustained by the evidence upon an application of a proper measure of damages which was incorporated as a part of the instructions given by the court. Thus no reversible error can be predicated on the instructions or the amount recovered. 12 O.S.1951 § 78; Bunch v. Perkins, 198 Okl. 517, 180 P.2d 664, and Squyres v. Klick, Okl., 264 P.2d 325.

■ In considering the appeal of the plaintiff from the judgment and order granting a new trial on the petition of defendant, based upon newly discovered evidence, in this same case, which appeal bears No. 38,372 in this court, we are confronted with the question whether the trial court abused its discretion in granting such new trial. The granting or refusing of a new trial on the ground of newly discovered evidence rests to a large extent in the discretion of the trial court, and will not be disturbed by this court where no abuse of such discretion is shown. Chew v. Fouts, 191 Okl. 665, 132 P.2d 949. However, we held in Bates v. Winkle, 208 Okl. 199, 254 P.2d 361, 362:

"The phrase 'discretion of courts' as applied to granting and denying new trials, means a legal discretion to be exercised in discovering the course prescribed by recognized principles of law."

Therefore we must look to the recognized principles of law as required for granting a motion for new trial upon the grounds of newly discovered evidence. Title 12, Section 651, subdivision 7, provides that a new trial may be granted on the application of the party aggrieved for any of nine different causes, one of which under subdivision 7 is "newly-discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial."

On this petition for a new trial a hearing was had about nine months after the original trial of the cause. At this hearing both parties appeared and both introduced evidence.

■ On this hearing it was the position of the defendant, and there was competent evidence to show, that the lake was full at the time of this hearing; that the dam had not given way since the trial; that the lake had remained substantially full since the trial nine months before; that the rainfall, at the nearest weather station about sixteen miles away, had been less than average since the trial.

At this hearing it was the plaintiff's position, and there was competent evidence to show, that although the lake was full, or nearly full, at the time of the hearing, that the water level had been up and down since the trial as it had been before the trial; that since the trial he had hauled about fifty loads of rock, brick and concrete fragment to use to bolster the dam to save it; that there were places which made their appearance in the dam since the original trial which would and did show damage or loss of efficiency in the dam; that plaintiff was continuing in his efforts to bolster and repair the dam to preserve it.

It is difficult to analyze the evidence at this hearing on petition for new trial and to determine which items of this evidence really demonstrate newly discovered evidence, and to separate therefrom that part of this evidence which shows change of condition. It might be more exact to say that the defendant's evidence at this hearing tends to show less change in condition, but rather tends to show a continuation of the same condition which existed at the time of the original trial nine months before. The evidence does show substantial change in condition due to the work done by plaintiff in repairing or bolstering the earthen dam.

It would seem that this court should accept it as settled by the original trial that there was damage to this earthen dam by the dynamite explosions, and that the amount of such damage was fairly determined by the jury. While defendant's evidence on this last hearing tends to support defendant's original contention that the earthen dam was not so damaged by the explosions, or tends to minimize that damage, and to show that the damage at least in these nine months has not demonstrated it was as serious as some of the plaintiff's witnesses anticipated it would be, yet we must remember that if the damage had been as serious as some of the witnesses at the original trial estimated it to be, the

damage could have amounted to as much as $30,000, instead of the $9,000 awarded by the jury.

We are forced to the conclusion that very little, if any, of the evidence presented at this last hearing could properly be characterized as newly discovered evidence. This proceeding demonstrates diligence and industry on the part of defendant to carry on in its defensive position and contention that the dynamite explosions did not damage the earthen dam, but that point must be taken as foreclosed, at least to a large extent, by the original trial and jury verdict which was rendered at a time when the lake likewise was full, and when there was competent proof of substantial damage to the lake and dam. While the defendant's marked persistence is admirable and praiseworthy, its showing seems to be legally inadequate to justify this new trial.

■ In the case of Bates v. Winkle, supra, this court set forth six requirements for granting a new trial based upon newly discovered evidence; (1) must have been discovered since the trial; (2) could not have been discovered before the trial by exercise of due diligence; (3) must be material to the issues; (4) must not be merely cumulative to the former evidence; (5) must not be merely to impeach or contradict the former evidence; (6) must be such as will probably change the result in the event a new trial is granted.

We must agree that this evidence has been discovered since the trial, since it is clear that it did not exist at the time of the trial, and it could not have been discovered before the trial. However, we have observed that the defendant presented evidence generally as to the same facts at the original trial. This evidence would be merely cumulative as to all the issues presented at the original trial. About the only additional facts on defendant's side would be as to the rainfall since the trial, and the fact that the dam had not fully given way in the nine months since the trial. This latter fact would tend to partially contradict the anticipations of the expert witnesses, or rather to show that so far their fears for the dam had not been fully justified, but that would still leave this evidence in the general classification of merely cumulative or merely contradictory evidence, if it could in other respects qualify as newly discovered evidence.

The evidence here relied upon for new trial is not evidence which was in existence and available at time of trial, but which was not produced at the trial because of the failure to discover it, or because aggrieved party was excusably ignorant thereof. This is evidence of facts occurring since the trial. Therefore it is not evidence which has been newly discovered, but is evidence which has developed since the trial. As if the original verdict had been for defendant and nine months later the dam had gone out entirely, would plaintiff have been entitled to a new trial as on "newly discovered evidence?" We think not. The courts in this jurisdiction have not had occasion to distinguish between newly discovered evidence and newly developed evidence. However, in the case of United States v. Bransen, 142 F.2d 232, Circuit Court of Appeals of Ninth District, the Court held:

> "'Newly discovered evidence,' within Federal Rule 59, refers to evidence of facts existing at time of trial, of which aggrieved party was excusably ignorant. Federal Rules of Civil Procedure, rule 59, 28 U.S.C.A. following section 723c."

In Putnam v. MacLeod, 23 R.I. 373, 50 A. 646, 647, the court said:

> "* * * The affidavits presented in support of this branch of the petition show that the evidence relied on consists solely of transactions which have taken place since the trial of the case, * * * This is not newly discovered evidence, and constitutes no ground for a new trial."

Our courts have looked with some disfavor upon granting new trials upon newly discovered evidence, and we are of the

view that all of the requirements above set forth must be present in order for one to be entitled to a new trial. Vickers v. Phillip Carey Co., 49 Okl. 231, 151 P. 1023, L.R.A. 1916C, 1155.

Therefore, for the reasons above stated, we are of the opinion, and so hold, that the judgment of the trial court in Case No. 38,095 be affirmed.

We are of the opinion, and so hold, that the judgment of the trial court granting a new trial in this case, which is designated as No. 38,372 in this court, was in error and this order and judgment is set aside and held for naught.

Affirmed as to No. 38,095, and reversed as to No. 38,372.

DAVISON, C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, V. C. J., and BLACKBIRD, J., dissent.